Our final case of the day is Munoz-Rivera v. Garland. Ms. Khan. Good morning esteemed panel. May it please the court, my name is Afshan Khan. I'm representing the petitioners in this matter, Ms. Munoz and her daughters, Ana Cristina and Maria de los Angeles. Your Honor, we filed this petition for review, so that way you may grant and hopefully reconsider this case may be under further reconsideration as we appealed the decision from the Board of Immigration Appeals as well as the immigration judge and the findings from the immigration judge that was also supplanted by the Board of Immigration Appeals. We disagree with the findings of the immigration judge stating that my client, Ms. Munoz, the lead respondent, there was an adverse credible finding. We believe that she was credible and any misstatements that were made during her testimony were able to be rehabilitated through her redirect and she was able to explain the reasons for her misstatements during her testimony itself. We're also making the argument that the judge, particularly as well as the BIA, failed to consider the corroborating evidence that was included as part of the overall immigration proceedings themselves, which include export testimony, included corroborating country reports of the conditions of both Honduras and Guatemala and the reason why both countries were included, as my brief had explained, Ms. Munoz was born, is a citizen of Honduras and her children were both born in Guatemala. Olds are Anna and Maria today. They are both not here, Your Honor, respectfully, just because of their work obligations and so forth, but they are here. No, I asked you how old they are. Oh, I apologize, Your Honor, I didn't hear you. Yeah, sorry. I apologize. They're both under 21. Anna, being the oldest, is 21 and her younger sister is about 19 years old. So when they came to the United States, they were in their teens when they entered with their mother back in 2015 and 16. Now, going to the issue of the adverse credibility finding, I understand government counsel stated that we waive our rights, but we disagree with this wholeheartedly. During, in our briefs, we explained, we basically stated that we disagreed and we felt that my client was credible during her explanation, during her testimony in front of the immigration judge. Yes, we may not have. I'm going to interrupt you again because I really need to know the answer. Is Spanish or another indigenous language, Ms. Munoz Rivera's first language? Spanish is her first language, Your Honor. And this, and so there was a Spanish interpreter available at the hearing as well. At the time that she filled out her first application, the application is in English, but I presume, but I don't know, that she also was provided a translated copy of the application? Your Honor, the first time she filed, she filed per se with the help of a family member. And while it did provide information, it wasn't clearly, it wasn't clearly provided to her. When she had counselor, myself, to prepare additional evidence, additional documentation. I guess that's not my question. My question is, you know, if English is in her first language, when she was filled out the first application per se, was she also provided some sort of a translated version or a guideline in Spanish or in her native language that would explain what those questions were about? She had a family friend explain in Spanish what the questions were, but clearly, at least with her per se application, she did not completely understand the significance of each question of what exactly it was requesting in terms of the past harm that she suffered by her ex-partner, the father of her children, as well as the future harm that she fears for him, as well as his partner, his current partner at the time. So what is your argument that she was able to rehabilitate her inconsistencies, particularly as it pertains to whether or not she was physically abused by her partner? Well, I mean, so Your Honor, when, during the redirect, my client, during her testimony, my client had stated, made misstatements about what she explained when she first initially came across the border with the border officials and what was later placed in her application itself, and then further on when she had the amended application. In that respect, her statements, she explained that obviously coming to the border, not being aware of what the situation was in terms of what steps she had to take, she was not completely open and honest with the border officials themselves. Being a male border official, not feel comfortable sharing the past harm that she experienced at the hands of her ex-partner. She also explained that she did suffer harm. There was misstatements in terms of what she explained in terms of what she was trying to state, the things that he did, as well as confusion as to the things that his partner had done also. But it was clear based on her explanation that she did fear and she did have fear based on what she had experienced, what she had gone through with her ex-husband. And it was also noted in the expert testimony that was submitted as part of the overall hearing, as well as Ms. Munoz's daughter, oldest daughter, Ana wanted to testify to explain personal knowledge what she experienced seeing her mom before she being a victim of this domestic violence, as well as what she had gone through in those circumstances while living in Guatemala also. But as I see it though, it appears that in her amended application, she stated affirmatively that she was physically abused by her partner. And then in her testimony upon cross-examination, she stated that in fact, she had not been physically abused by her partner, but she had only been threatened. To me, that seems like a rather stark and core discrepancy. And so I guess going back to what I was saying, how do you think she was able to rehabilitate herself later on on redirect? Well, I believe the question that we had asked if what had happened with her, she did state that there was harm there. And I think that there was confusion and she explained the confusion as to why it was difficult for her to explain what was happening. She did explain during her testimony, it is a very difficult discussion to talk about because really just most recently when she was at her hearing, that was when she really began to open up and discuss her past harm that she suffered. So it's reasonable to infer that it was difficult for her to discuss the physical harm that she faced by her former partner. Ms. Cohn, I'm looking at the transcript here and you asked her, Senora Munoz, did your ex-partner ever hit you? And her response was, no, he just mistreated me verbally with his threats. So that seems like a pretty clear statement. All right. But I do believe later in the transcript, Your Honor, I do ask her the difficulty of her explaining what her threats were. And she does go into that. She does explain that it is very difficult for her to discuss these things. And obviously someone who's been through years of trauma and then coming to a new country, being able to express that to a tribunal is a very difficult task and for someone to explain fully the reasons why she fears returning back to her country. I do see I have two minutes available. I don't know if you'd like me to reserve that time for a rebuttal or... Mm-hmm. Counsel, you should sit at counsel table. Mr. Lundberg. Thank you, Judge Easterbrook. Panel, may it please the court, Robert Lundberg on behalf of the Attorney General of the United States. As the court pointed out, there are very drastic differences in the different stories that the petitioner has told. There's a due process argument that I'd be happy to get into, but exhaustion and waiver really are a thread that run throughout this entire case. So the... Mr. Lundberg, can you address my kind of question, which is when someone like Ms. Munoz approaches, comes into this country or approaches the country and signs or fills out that application, is she given guidance in her native language as to what the questions are asking her or is she left to her own devices at that initial stage? Your Honor, the application in the record is English and I'm not aware of any Spanish version. There's not one in the record. So the only record or the only application we have to go off of is that in the record, which is in English. But the first application she submitted, she did discuss fear of the ex-partner's new girlfriend. So that signals that she had noticed that she had to describe the fear that she had and who she was afraid of. It just seems to me that it's more difficult for the government to rely upon that first application if the only form of the application available to her is in English when she doesn't know English. And so it seems like that would be, it just strikes me as odd that the government doesn't provide some sort of translated version or some sort of explanatory document with regard to the questions, the applicants in the language of the person that's trying to fill it out. I understand your question, Your Honor. The record...  and I bring that up because the government is to some extent relying upon that inconsistency in that first initial application. And the appellant brings up the case about how in interviews of, like at the airports of entry of the country, that the probative value of those types of responses, given the language barrier, might not carry as much weight as later proceedings. And so it's in that context that I raise it. I wonder if that's something that the agency might go back and think about. I can't speak on behalf of the agency, but I'd be happy to share this court's concern. But I would say that the petitioner didn't raise the issue of a language barrier in her brief to the agency. She hasn't brought that up, but other than to say she didn't really understand what she was supposed to discuss. But I would say again, that she had noticed that she had to explain why she was afraid and of whom she was afraid. And she did discuss that in the application. And that response mirrors what she told the border official. And presumably that was in Spanish because the petitioner affirmed that she had given certain responses. So she obviously understood the questions at the border interview. But what the agency determined was that even if you set that initial border interview aside, she still failed to address the inconsistency in her application. So she told several stories and they change each time she gives that story. At the border interview in her application, and then she submitted a supplemental application where her story changed from being afraid of the partner's girlfriend to now she's afraid of the ex-partner based on significant physical violence. And then she told her story to the purported expert and told a different story there. She said she was subject to emotional and physical violence, but also extreme sexual violence. And that fact never comes out anywhere in the testimony before the immigration judge or the application. And then as the court alluded to during her examination before the immigration judge, she told two drastically different stories. First, that she had been subject to significant physical violence. And then on cross-examination and redirect that she was not subject to any physical violence, only verbal abuse. So the corroborating evidence that she says rehabilitates her claim have, well, first they don't corroborate her claim. There are issues with the expert's declaration because that was based on the petitioner's claims that the immigration judge found were not credible. And again, they had a separate set of facts. It was a separate story. She also asked the court to consider the police report, but there were problems with the police report on its face. And also they directly contradicted her testimony before the immigration judge. So the corroborating evidence that she says or suggests would rehabilitate her credibility do not. They in fact really confuse the story that she's trying to tell with inconsistent statements. Mr. Lundberg, I'd like to take you somewhere else because I understand that Ms. Munez-Rivera has a different nationality than her daughters, but I do find it troubling that they're being ordered removed to different countries. I am concerned about these removal orders that are taking these daughters away from their mother. I mean, even if they are adults, aren't there any other options? Your Honor, first I'd say that the petitioner does not raise that concern in any of her briefing before the agency or before this court. I would just say and being cautious not to step into Chenery background here, that that is something that she could take up with the Department of Homeland Security and resolve that issue. But that's outside of the purview of the Board of Immigration Appeals, the decision that this court is reviewing and also this court. So regarding the two discrete claims that petitioner raised in her brief to the Board, which she did not fail to exhaust and waive, I've discussed the corroborating evidence. And lastly, I would just touch on the due process claim that she makes. Obviously, at the heart of due process is the opportunity to be heard at a meaningful time. And as I mentioned, the petitioner had several opportunities to be heard before USCIS asylum officer, where she made her initial credible fear claim. And a predicate to that is raising a fear of return to a home country, either to ICE or the border agent. Otherwise, she would not have been referred for that credible fear interview. She submitted two asylum applications that prompt her to explain exactly who would harm her, what that harm would be and the basis of that harm. And then she had the opportunity to submit a written declaration by the expert and also to testify on her own behalf. She alleges that the court violated her due process by disallowing her daughter's testimony. And I would point the court to Hamid and also Roman, which we cite in our brief, that the due process violation made there is a two-prong test. And the board dismissed the appeal on the due process grounds, finding that she failed to assert any testimony that the daughter would have offered to the court and any explanation of how that testimony would have affected the outcome of the appeal. And this court in Hamid said an applicant's failure to allege excluded testimony that would potentially affect the outcome of the hearing was fatal to due process. So in sum, I would just say that the limited discrete issues that this court can entertain based on failure to exhaust and waiver are both the agency's decision is supported by substantial evidence. The petitioner has not pointed to any evidence that would compel any reasonable judge to find otherwise. So with that, we would ask the court to deny. Thank you. Thank you, counsel. Anything further Ms. Kahn? Again, just to address the concerns brought up by opposing counsel. Again, we would like to make the assertion again that we did exhaust our argument in terms of showing that we do believe that the client was or she did try to rehabilitate herself during her redirect testimony. She did explain that it was difficult for her to discuss the past trauma she suffered on the hands of her ex-partner, two board officials, first coming in at the border, being apprehended, being in a detention facility. And two, in regards to the due process issue, I think under the 2008 decision of, and I might be mispronouncing, so I apologize, Kowalski v. Mufasky states that communal significance must be considered as well. And we believe that we did try to raise this issue of that the daughter, being that she was aware, being her personal knowledge and having personal understanding of what her mother had gone through, what she had gone through with her own father as well as her father's partner, that would have added, that would have compelled or provided more information that would have met the legal requirements under asylum law to show the past harm that her mother had faced as well as she and her sister faced. And the fear that they have of returning back to their countries also. We hope based on the evidence that we had submitted and the briefs that we had provided that this court does grant our petition for review. Thank you, your honors. Thank you, counsel. The case is taken under advisement and the court will be in recess.